UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN STUART MARSHALL,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security<br>Administration,<br><br>　　　　Defendant. | Case No. CV 11-7815-SP<br><br>**MEMORANDUM OPINION AND ORDER** |

**I.**

**INTRODUCTION**

On September 21, 2011, plaintiff John Stuart Marshall filed a complaint against defendant Michael J. Astrue, seeking a review of a denial of Disability Insurance Benefits ("DIB"). Both plaintiff and defendant have consented to proceed for all purposes before the Magistrate Judge pursuant to 28 U.S.C. § 636(c). The parties' briefing is now complete, and the court deems the matter suitable for adjudication without oral argument.

Having carefully studied, inter alia, the parties' written submissions and the Administrative Record ("AR"), the court concludes that, as detailed herein, there is

substantial evidence in the record, taken as whole, to support the ALJ's decision. First, the ALJ properly rejected the opinions of the treating medical professionals. Second, the ALJ provided clear and convincing reasons for rejecting plaintiff's subjective complaints about his physical impairments. Third, the ALJ's assessment of plaintiff's alleged sleep, fatigue, and concentration problems in finding plaintiff's residual functional capacity ("RFC") was proper. Therefore, the court affirms the Commissioner's decision denying benefits.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was fifty-eight years old on the date of his December 3, 2009 administrative hearing, has two master's degrees, one in business administration and the other in applied statistics. *See* AR at 24. His past relevant work includes employment as a business agent, a business manager, and a financial manager. *Id.* at 52-53, 71.

On August 19, 2008, plaintiff applied for DIB, alleging that he had been disabled since July 1, 2002, due to back, abdominal, and sleep problems. *Id.* at 117-120, 128, 151. Plaintiff's application was denied initially and upon reconsideration, after which he filed a request for a hearing.[1]  *Id.* at 60, 88-89.

On December 3, 2009, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ. *Id.* at 18-51. The ALJ also heard testimony from Howard J. Goldfarb, a vocational expert. *Id.* at 52-59. On March 26, 2010, the ALJ denied plaintiff's request for benefits. *Id.* at 61-79.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff was not engaged in substantial gainful activity from

---

[1] In the Disability Report Appeal Form, plaintiff reported that, in addition to the other impairments, he suffered from costochondritis, which he claimed the initial review did not consider, and worsening depression. *Id.* at 136-37.

July 1, 2002, his alleged disability onset date, to December 31, 2005, his date last insured ("DLI"). *Id.* at 66.

At step two, the ALJ found that, through the DLI, plaintiff suffered from severe medically determinable impairments consisting of: costochondritis (causing chest wall pain), torn meniscus on the right knee, lumbar spine strain with disc degeneration, and disc degeneration of the thoracic spine. *Id.* at 66-68.

At step three, the ALJ determined that the evidence does not demonstrate that plaintiff's impairments, either individually or in combination, meet or medically equal the severity of any listing set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 68.

The ALJ then assessed plaintiff's RFC[2] and determined that, through the DLI, he can perform light work with the following limitations: "lift/carry 20 pounds occasionally and 10 pounds frequently with standing/walking and sitting up to 6 hours each in an 8-hour workday; no more than occasional stooping, crouching, crawling, kneeling; and no concentrated exposure to unprotected heights or work around dangerous machinery." *Id.* at 68 (emphasis omitted).

The ALJ found, at step four, that plaintiff "was capable of performing past relevant work as a sedentary, skilled" worker, through the DLI, as a business agent, a business manager, and a financial manager. *Id.* at 71.

At step five, based upon plaintiff's vocational factors and RFC, the ALJ alternatively found that, "through the date last insured, considering [plaintiff's] age, education, work experience, and residual functional capacity, [plaintiff] was capable

---

[2] Residual functional capacity is what a claimant can still do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

3

of making a successful adjustment to other work that exited in significant numbers in the national economy." *Id.* at 72. The ALJ therefore concluded that plaintiff was not suffering from a disability as defined by the Social Security Act. *Id.*

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council on August 10, 2011. *Id.* at 1-6. The ALJ's decision stands as the final decision of the Commissioner.

## III.

## STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g) (2010). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.*

1 (quoting *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## DISCUSSION

### A. The ALJ Properly Rejected the Opinions of Plaintiff's Treating Physician and Chiropractor

Plaintiff contends that the ALJ improperly discredited the opinions of his treating physician, William Costigan, M.D., and his chiropractor, Mark Anthony, D.C., while relying heavily on relied on the medical opinions of Andrew Roth, M.D., who examined plaintiff after the DLI. Pl.'s Mem. at 5-12. The court disagrees, for the reasons discussed below.

In evaluating medical opinions, Ninth Circuit case law and Social Security regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996); *see also* 20 C.F.R. § 404.1527(c) (2012) (prescribing the respective weight to be given the opinions of treating sources and examining sources). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Lester*, 81 F.3d at 830 (citation omitted); *accord Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1036 (9th Cir. 2003). This is so because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987) (citation omitted). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830 (citations omitted).

Where the treating physician's "opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons." *Benton*, 331 F.3d at 1036; *see also Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) ("While the

ALJ may disregard the opinion of a treating physician, whether or not controverted, the ALJ may reject an *uncontroverted* opinion of a treating physician only for clear and convincing reasons." (citation omitted)). "Even if the treating doctor's opinion is contradicted by another doctor, the [ALJ] may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record for doing so." *Lester*, 81 F.3d at 830 (internal quotation marks and citation omitted); *accord Reddick*, 157 F.3d at 725. The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal quotation marks and citation omitted).

Here, the ALJ "set[] out a detailed and thorough summary of the facts and conflicting clinical evidence, stat[ed] his interpretation thereof," and ultimately gave "significant weight" to Dr. Roth's opinion while attaching "little weight" to the opinions of Dr. Costigan and Dr. Anthony. *See Magallanes*, 881 F.2d at 751 (internal quotation marks and citation omitted); AR at 70. Having duly reviewed the record and the parties' written submissions, the court finds that the ALJ properly rejected the opinions of Dr. Costigan and Dr. Anthony regarding plaintiff's RFC.

First, the ALJ attached "little weight" to the opinions of Dr. Costigan from April 2003 through June 2003 (as well as to the opinions of Gregory Adamson, M.D., who also examined plaintiff in the same time period). AR at 70. The ALJ considered Dr. Costigan's opinions that plaintiff was "unable to perform any lifting, driving, bending, or prolonged standing/walking and/or sitting for more than 30 minutes at a time . . . ." *Id.* But the ALJ found "no objective support for such opinions" and observed that "those limitations/restrictions seem to be more prophylactic in nature rather than a statement of claimant's greatest capacity." *Id.*; *see* 20 C.F.R. § 404.1545(a)(1) (RFC is "the most you can still do despite your limitations"). This is a specific and legitimate reason for rejecting Dr. Costigan's

opinion. *See Batson v. Comm'r*, 359 F.3d 1190, 1195 (9th Cir. 2004) (an ALJ may discredit treating medical opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical findings); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings" (citation omitted)).

In his briefing, plaintiff argues Dr. Costigan's opinions "should have been given more weight," "[g]iven the fact that [he] performed twenty three physical examinations of the Plaintiff between July 23, 2002 and April 14, 2004, and ordered and reviewed diagnostic studies confirming orthopedic problems . . . ." Pl.'s Mem. at 7; *see also* Reply at 4-6. But none of the records from July 2002 through April 2004 documenting Dr. Costigan's treatment of plaintiff, his assessment of plaintiff's functional capacity, and his review of diagnostic studies such as magnetic resonance imaging ("MRI") provide direct, specific, and objective support for the above-described physical limitations. *See* AR at 214-55, 352-54. Instead, the ALJ found that plaintiff's testimony at the administrative hearing – that between 2002 and 2005, plaintiff was "able to lift 30 to 40 pound[s], walk approximately 400 yards, [and drove himself to] physical therapy sessions . . . approximately 4 days a week" – contradicted the physical limitations identified by Dr. Costigan during the same period. *See* AR at 70; *see also id.* at 38-39, 43-45. Inconsistency between a treating physician's opinion and a claimant's daily activities may be a specific and legitimate reason for rejecting the opinion. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). Considering the record as a whole, the ALJ was justified in concluding that Dr. Costigan's opinions were not based on objective support.

Second, the ALJ discounted Dr. Anthony's opinions because Dr. Anthony is a chiropractor and because his opinions were not supported by objective evidence.

1  AR at 70.  Relying on Social Security Ruling ("SSR") 06-3p,[3] the ALJ appears to
2  have given Dr. Anthony's opinions less weight than "acceptable" sources of
3  medical information such as licensed physicians whose opinions carry special
4  weight.  *Id.*; 20 C.F.R. § 404.1513(a), (e).  The ALJ also rejected Dr. Anthony's
5  opinions because the ALJ found the opinions to be "unsupported by substantial
6  objective evidence."  AR at 70.  The ALJ pointed out, for example, Dr. Anthony's
7  February 2008 report in which Dr. Anthony limited plaintiff to lifting 5 pounds,
8  revising an earlier lifting restriction of 25 pounds maximum.  *Id.* at 70, 301-303,
9  305.  The ALJ found the revised limitations and restrictions set forth in that report
10 to have "no convincing basis," as Dr. Anthony's reason for the revision was only
11 that 25 pounds was "too heavy."  *Id.* at 70, 305.  Dr. Anthony never explained
12 through objective evidence why plaintiff was restricted to 5 pounds, as opposed to
13 10, 15, or 20 pounds.  Instead, as the ALJ found, Dr. Anthony "essentially
14 record[ed] what [plaintiff] reported to him," which qualifies only as a record of
15 plaintiff's subjective complaints.  *Id.* at 70, 304-06.
16     The ALJ also found Dr. Anthony's February 2008 report to be without
17 objective support because the report was inconsistent with plaintiff's testimony that
18 he could lift 30-40 pounds.  *Id.* at 70; *see also id.* at 44-45, 304-06.  In his briefing,
19 plaintiff argues that the ALJ inaccurately characterized plaintiff as capable of lifting
20 30 to 40 pounds regularly in 2002-2005.  Pl.'s Mem. at 8.  Plaintiff points out that
21 he also testified that he "could only lift that amount of weight for 20 feet" and doing
22 it just once would trigger significant muscle spasms.  *Id.*; AR at 44-45.  The ALJ's

---

[3] "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies.  SSRs are binding on all components of the [Social Security Administration].  SSRs do not have the force of law.  However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference.  We will not defer to SSRs if they are inconsistent with the statute or regulations."  *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001) (internal citations omitted).

finding of inconsistency, however, was correct in that Dr. Anthony's report and plaintiff's testimony did conflict as to plaintiff's greatest capacity – the most plaintiff could do despite his limitations. *See* 20 C.F.R. § 404.1545(a)(1). Therefore, the ALJ was justified in rejecting Dr. Anthony's opinions.

Third, the opinions of Dr. Costigan and Dr. Anthony are unsupported by the opinions of Dr. Roth, an independent medical evaluator who examined plaintiff's medical history dating back to the 1990s and conducted his own orthopedic examination of plaintiff in 2007. AR at 70, 307-61. Attaching "significant weight" to Dr. Roth's opinions, the ALJ accepted Dr. Roth's conclusion that "no evidence of positive objective findings" could be found in support of plaintiff and that "no functional limitations" could be assessed. AR at 70, 348.

Plaintiff argues in his briefing that because Dr. Roth's findings were made in 2007, well after plaintiff's DLI of December 31, 2005, plaintiff's complaints cannot be measured against those findings, and Dr. Roth's opinions cannot override the conclusions of Dr. Costigan and Dr. Anthony who treated and examined plaintiff over the course of about three years each during the insured period. Pl.'s Mem. at 9-11; Reply at 4-6. Plaintiff also asserts it was improper and inconsistent for the ALJ to accept Dr. Roth's opinions, which were formed after the DLI, while rejecting plaintiff's depression for being a post-DLI impairment. Pl.'s Mem. at 9-10. In addition, plaintiff contends Dr. Roth's opinions must be discounted because his opinions were solicited by an employee of an insurance company, which was determining plaintiff's insurance eligibility. *Id.* at 10. Plaintiff argues that because Dr. Roth's report arose in that "adversarial context," Dr. Roth's opinions are "not the most neutral evidence to consider when assessing Plaintiff's limitations." *Id.*

Plaintiff's arguments against the ALJ's adoption of Dr. Roth's opinions fail for the following reasons. First, as plaintiff concedes, "medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the pre-expiration condition." *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988)

9

(citations omitted); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1461 n.5 (9th Cir. 1995) (citation omitted) ("Retrospective diagnoses by treating physicians and medical experts, contemporaneous medical records, and testimony from family, friends, and neighbors are all relevant to the determination of a continuously existing disability with onset prior to expiration of insured status."). Nothing bars the ALJ from relying on a retroactive evaluation by a physician or from giving the evaluation more significant weight than the opinions of treating medical professionals – as long as the ALJ provides "specific and legitimate reasons supported by substantial evidence in the record for doing so." *Lester*, 81 F.3d at 830 (internal quotation marks and citation omitted). As discussed above, the ALJ provided specific and legitimate reasons why he could not find objective support for the opinions of Dr. Costigan and Dr. Anthony. The ALJ also pointed to Dr. Roth's finding of "an entirely normal orthopedic examination with no evidence of positive objective findings . . . [and] no functional limitations." AR at 70, 348-50. These are sufficiently specific and valid reasons offered by the ALJ to contradict the opinions of Dr. Costigan and Dr. Anthony. Furthermore, because a claimant who is applying for DIB after the DLI has the burden to show that his health condition was "continuously disabling from the time of onset during insured status to the time of application for benefits" (*Flaten*, 44 F.3d at 1460), and because plaintiff here did not apply for DIB until August 19, 2008, Dr. Roth's 2007 evaluation of plaintiff and finding of "no functional limitations" is particularly relevant in this case. AR at 70.

Next, there was no inconsistency between the ALJ's acceptance of Dr. Roth's opinions and the ALJ's rejection of depression as a qualifying impairment. As noted above, a medical opinion offered after the DIL is relevant to the determination of RFC. But in order to receive benefits, a plaintiff must establish that his or her disability began on or prior to the DIL. *See Flaten*, 44 F.3d at 1458. Here, the ALJ concluded that the symptoms of plaintiff's depression started after plaintiff's mother died in July 2008, well after plaintiff's DIL. AR at 67-68.

10

Finally, plaintiff's argument that Dr. Roth's opinions lack reliability because they arose out of the "adversarial context" of insurance eligibility determination is without legal basis. *See* Pl.'s Mem. at 10.

Having considered the ALJ's stated reasons for discounting the opinions of Dr. Costigan and Dr. Anthony and for adopting Dr. Roth's opinions, as well as plaintiff's arguments in his briefing, the court finds that the ALJ properly accorded "significant weight" to Dr. Roth's opinions. AR at 70; *see Magallanes*, 881 F.2d at 751 (examining physician's opinion may constitute substantial evidence if the "nontreating physician relies on independent clinical findings that differ from the findings of the treating physician" (internal quotation marks and citations omitted)). Accordingly, the ALJ did not err in evaluating the medical opinions here.

### B. The ALJ Provided Clear and Convincing Reasons for Discounting Plaintiff's Credibility and Subjective Complaints

Plaintiff argues that the ALJ failed to provide clear and convincing reasons for rejecting his subjective complaints regarding the painful muscle spasms he suffered in the back, thoracic, and abdominal areas and the resulting sleep problems he experienced during the insured period. Pl.'s Mem. at 12. Plaintiff principally asserts that the ALJ erred in discounting his testimony based on evidence of plaintiff's daily activities, as the ALJ mischaracterized statements in the record regarding those activities. *Id.* Plaintiff maintains that "the exhibit upon which the ALJ relied to discredit the Plaintiff's testimony [regarding his capacity for certain daily activities] does not contain sufficient specificity of the nature and extent of the Plaintiff's ability to perform some activities of daily living." *Id.* at 14. Plaintiff also alleges the ALJ erred in discounting his credibility based on his discontinuation of pain medication, as the ALJ failed to consider the reasons plaintiff provided for not taking pain medication. *Id.* at 15.

A plaintiff claiming DIB carries the burden of producing objective medical evidence of his or her impairments and showing that the impairments could

reasonably be expected to produce some degree of the alleged symptoms. *Benton*, 331 F.3d at 1040. But once the claimant meets that burden, medical findings are not required to support the alleged severity of pain. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); *see also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) ("claimant need not present clinical or diagnostic evidence to support the severity of his pain" (citation omitted)).

Instead, once the claimant has met the burden of producing objective medical evidence, an ALJ can reject the claimant's subjective complaint "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." *Benton*, 331 F.3d at 1040. The ALJ may consider the following factors in weighing the claimant's credibility: (1) his or her reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and his or her conduct; (3) his or her daily activities; (4) his or her work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. *Thomas*, 278 F.3d at 958-59. Here, the ALJ did not find evidence of malingering. *See generally* AR at 55-57. Thus, in rejecting plaintiff's credibility, the ALJ was required to articulate clear and convincing reasons. *See Benton*, 331 F.3d at 1040. Having carefully reviewed the record, the court finds that the ALJ provided several clear and convincing reasons for discounting plaintiff's subjective complaints.

First, the ALJ found the objective medical evidence did not support plaintiff's subjective complaints. AR at 69. Based on the medical evidence in the record, the ALJ credited plaintiff as having had "severe" impairments of "costoconchondritis/ chest wall pain; torn meniscus, right knee; lumbar spine strain with disc degeneration; disc degeneration, thoracic spine" as well as sleep problems arising from these impairments during the insured period. *Id.* at 66-67. But in the "Independent Medical Evaluation" filed by Dr. Roth, which "includes a comprehensive medical history and medical records, and orthopedic examination,"

the ALJ found objective medical evidence to discredit plaintiff's subjective complaint that he is unable to work. *Id.* at 70. As defendant points out in his briefing, the ALJ found evidence of plaintiff having "full range of motion of the knee *and lumbar spine* without pain" by December 2002 (*id.* at 67, 194), "no functional limitations" based on "an entirely normal orthopedic examination" in October 2007 (after which Dr. Roth, the examining physician, declared that plaintiff was ready to "perform his job on a full 5-day work week") (*id.* at 70, 349-50), and "no significant stenosis" of the thoracic spine by June 2008 (*id.* at 67, 370). Def.'s Mem. at 10. These are clear and convincing reasons based on objective medical evidence that allowed the ALJ to properly discredit plaintiff's subjective complaints. Although a lack of medical evidence supporting plaintiff's alleged symptoms cannot be the sole reason for rejecting his testimony, it can be one of several factors used in evaluating the credibility of his subjective complaints. *See Rollins*, 261 F.3d at 856-57.

Second, the ALJ properly found that plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were contradicted by plaintiff's own testimony and evidence of his activities. AR at 69; *see also Thomas*, 278 F.3d at 958-59 (when weighing a claimant's credibility, the ALJ may consider inconsistencies between the claimant's testimony and daily activities); *Tonapetyan*, 242 F.3d at 1148 (an ALJ may engage in ordinary techniques of credibility evaluation, such as considering inconsistencies in a claimant's testimony). The ALJ particularly found inconsistency between plaintiff's complaint that his "spasms, even on a good day, significantly impacted upon his ability to maintain normal activities of daily living" and surveillance video recordings of plaintiff from late 2003 in which he was filmed "running errands, carrying a piece of luggage over his shoulder, driving, taking long walks, dumping trash cans in a dumpster, riding a bike, and performing other activities" of daily living. AR at 69, 346. Plaintiff challenges the ALJ's characterization of the surveillance videos by asserting that the

weight of the items lifted and the actual walking and driving times and distances covered by plaintiff remain unknown.  Pl.'s Mem. at 12-13.  The court disagrees.  Even though not all facts about the surveillance videos are ascertainable from the record, the ALJ's finding of inconsistency between plaintiff's subjective complaints and the surveillance recordings is supported by the record.

Third, the ALJ properly considered, as part of his overall evaluation of the record, plaintiff's 2004 decision to stop taking pain medications and the fact that "no physician of record ever recommended surgical intervention to address his subjective complaints of spasms." *See* AR at 69-70; *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (the ALJ properly considered, as part of credibility evaluation, treating physician's failure to prescribe, and the claimant's failure to request, medical treatment commensurate with the "supposedly excruciating" pain alleged, and the "minimal, conservative treatment") (citation omitted); *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."); *see Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989) (the ALJ permissibly considered discrepancies between the claimant's allegations of "persistent and increasingly severe pain" and the nature and extent of treatment obtained).  Plaintiff explains in his briefing that he chose to discontinue pain medications because he wanted to "undertake alternative forms of treatment," which led to better pain relief.  Pl.'s Mem. at 15.  The ALJ did recognize the panoply of treatments physicians recommended and plaintiff sought (AR at 69-70); plaintiff is incorrect in implying that the ALJ stated plaintiff ceased pain treatment altogether.  As such, the ALJ did not err in suggesting that the treatments plaintiff received were not consistent with the alleged severity of plaintiff's impairments.  *Id.*

Accordingly, the court finds that the ALJ provided clear and convincing reasons, supported by substantial evidence, for discounting plaintiff's subjective complaints.

C. **The ALJ Did Not Err in His Assessment of Plaintiff's Alleged Sleep, Fatigue, and Concentration Problems in the RFC Determination.**

Plaintiff argues that the ALJ failed to adequately consider "plaintiff's fatigue resulting from interrupted sleep." Pl.'s Mem. at 14, 16-17. Specifically, plaintiff indicates in his briefing that the ALJ's RFC assessment was "based on purely exertional limitations," without considering the impact of "fatigue and concentration problems resulting from lack of sleep" and "lack of sleep due to pain" upon plaintiff's exertional activity. Id. at 16; Reply at 6-7. Plaintiff argues sleep deprivation was "the main problem" he identified in his application for DIB; thus, it should have been assessed more fully. Pl.'s Mem. at 16-17.

While plaintiff's is correct to point out that the ALJ did not address plaintiff's sleep problem extensively, the ALJ did discuss the issue as one of several problems associated with thoracic and lumbar issues. AR at 67-69. As part of his examination of the entire record, the ALJ examined the evidence for "pain interfering with [plaintiff's] ability to sleep well" and "[plaintiff's] inability to obtain adequate levels of sleep [which] significantly interfered with his ability to maintain adequate levels of concentration." Id. at 68, 69, 70. The ALJ concluded that plaintiff "had the residual functional capacity to perform a restricted range of light work," and that even if plaintiff is restricted "to the performance of simple work based upon his alleged symptoms of pain, fatigue, and limited concentration, there would be other jobs existing in the national economy that he is able to perform" utilizing his RFC. Id. at 68, 71.

The court finds that the ALJ adequately considered and discounted plaintiff's complaints of sleep, fatigue, and concentration problems when the ALJ made his RFC determination. Despite plaintiff's listing of sleep deprivation as "the 'main' problem" in his application for DIB (Pl.'s Mem. at 16), sleep deprivation is nonetheless a derivative problem, the existence and severity of which come into question once plaintiff's subjective complaints about the source of the problem –

15

pain from back, thoracic, and abdominal regions – are found to be not fully credible. In other words, once the ALJ discredited plaintiff's subjective allegations about his pain and functional limitations, the allegations of pain-induced sleep, fatigue, and concentration problems also lost credibility. As he provided clear and convincing reasons to discount plaintiff's subjective complaints about the underlying physical impairments, the ALJ was not required to engage in a separate extended analysis of the sleep and fatigue problems, which allegedly arose from the physical impairments. Having determined that the ALJ did not err in rejecting the opinions of Dr. Costigan and Dr. Anthony, adopting Dr. Roth's opinions, and discounting plaintiff's subjective complaints, the court accordingly finds that the ALJ did not err in his assessment of plaintiff's pain, fatigue, and concentration problems in the RFC determination.

## V.

## **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing this action with prejudice.

Dated: September 17, 2012

_____
SHERI PYM
UNITED STATES MAGISTRATE JUDGE